R. J. YENGEL et al., Appellants, v. W. E. ALLEN et al, Appellees.

**HIGHWAYS:** Establishment—Notice—Defective Service—Appearance—Effect. Defective service of the notice relative to the establishment of highways is rendered harmless by the appearance of the one defectively served. Section 1495, Code Supp., 1913.

**HIGHWAYS:** Establishment—Surveys, Etc.—Non-necessity. No survey or marking out is necessary when the precise location of the road is designated. So held when the location was designated as "on named section lines, and of the statutory width," though the section lines did not exactly join. Section 1489, Code, 1897.

**HIGHWAYS:** Establishment—Location—Non-joining Section Lines—Presumption. Where the petition, report and order called for a continuous road along a north and south line lying between four sections, and said line between the two north sections did not exactly join with the line between the two south sections, it will be presumed: (a) That the said lines are already connected by an east and west road; or (b) that the connection between the two non-joining ends is to be made on the east and west section line.

**HIGHWAYS:** Establishment—Location—Mile Posts, Stakes, Etc.—Non-necessity. Mile posts, stakes, etc., are only required where surveys are required. Section 1490, Code, 1897.

**HIGHWAYS:** Establishment—Bridges—Provision Non-jurisdictional. The statutory provision for a report as to the number and cost of bridges necessary on a proposed highway is directory only. Section 1493, Code, 1897.

**HIGHWAYS:** Establishment—Conditions. Conditions other than technical payment of damages awarded may be exacted as a condition to the establishment of a highway.

**HIGHWAYS:** Establishment—Conditions Imposed—Certainty Required. The orders of the board of supervisors, in establishing a highway, to the effect that the same be placed in a certain condition, will not be construed as placing such burden personally upon the petitioners, in the absence of clear and definite language to that effect.

HIGHWAYS: Establishment—Conditions—Delay in Fulfilling—Effect. Delay on the part of petitioners in paying the damages consequent on the establishment of a highway, as required, in no wise affects the legality of said establishment when the delay is occasioned by litigation concerning the amount of said damages.

HIGHWAYS: Establishment—Conditions—Failure to Fix Time Limit. The statutory requirement that the board fix a day on which the conditions imposed on the establishment of a highway be complied with, is directory. Sec. 1502, Code, 1897.

STATUTES: Construction—Mandatory or Directory. Principle recognized that statutes fixing the date for the doing of something which may as effectually be done at any other time, and merely for the orderly transaction of business, are usually regarded as directory.

HIGHWAYS: Establishment—Location—Fatal Indefiniteness. An order establishing a highway must locate the highway with precision. An order accompanied by no plats or surveys, and from which it is utterly impossible to determine the location, is fatally defective.

*Appeal from Lucas District Court.—C. W. VERMILION, Judge.*

MONDAY, MARCH 12, 1917.

SUIT to enjoin further action on the part of defendants in the establishment of certain highways. The petition was dismissed, and plaintiffs appeal.—*Modified and affirmed.*

*Stuart & Stuart* and *J. W. Kridelbaugh,* for appellants.

*Hickman & Wells,* for appellees.

LADD, J.—The orders to which exception is taken are those sustaining a demurrer to the petition as amended, and a motion to dissolve a temporary writ of injunction theretofore issued. Both depend on the validity of proceedings to establish two highways. These proceedings are fully stated in the petition, and for convenience, those relating to each road will be separately considered. On July 13, 1914, Samuel Neptune and 49 others, residents of the coun-

ty, filed a petition and the required bond with the county auditor, praying that "a highway 40 feet wide, commencing at the northwest corner of the southwest quarter of the northwest quarter, on the section line between Sections 5 and 6, in Township 71, Range 21, and running thence due north on section line one and one-fourth miles, intersecting road No. 60 on said section line between Sections 29 and 30 in Township 72, Range 21, be established."

Another petition, signed by Neptune and 27 others, for a highway 60 feet wide at the same location, and saying it was a substitute for that above, was filed with the county auditor, July 18th following. One King was duly appointed commissioner to view the proposed highway on July 13th, and filed his report July 20th, saying that he deemed "it advisable to open said road, as described in petition," and recommending that (1) "the petitioners put in concrete sub-cattle pass for Mr. Elijah Copeland not less than 20 feet wide," and (2) "the board of supervisors change the channel of Chariton River in Section 31 in Lincoln Township, as indicated on plat filed herewith, and that petitioners perform all the labor in making the change in said stream."

1. HIGHWAYS: establishment: notice: defective service: appearance: effect.
Notice was given as required by law, save that personal service on Elijah Copeland, James N. Field and Jacob Yengel is alleged to have been one day late. As each filed claims for damages, this defect was waived. *Gilcrest v. City of Des Moines,* 157 Iowa 525. Final hearing was postponed from time to time until April 6, 1914, when the following proceedings were had by the board of supervisors:

"A motion was made by W. E. Allen and seconded by W. A. Elliott, to accept the road as petitioned for by Samuel Neptune and others for a 60-foot highway as petitioned for, petitioners to pay all damages as per appraisement. To

change the creek so that there will be but one bridge across Chariton River coming into Chariton on said road. Said proposed road to be graded in good traveling condition about the same as the Air, Tight or New York Road, also with the understanding that the petitioners will present a petition to vacate a road commencing at the northeast corner of Section 31, Township 72, Range 21, Lucas County, Iowa, running west and southwest to north line of the southeast quarter of said Section 31, Township 72, Range 21, and that a highway 60 feet wide, commencing at the last mentioned point and running thence east and southeast 65 rods, more or less, to intersect the proposed highway along the east line of Section 31, Township 72, Range 21, be established. All conditions and requirements as above stated to be complied with on or before the first Monday of June, 1916, was voted on as follows: Yea—W. E. Allen and W. A. Elliott—Nay—Fred J. Yengel."

In addition to the foregoing facts, the petition as amended alleged that the proposed road "passes through timber, and that there are no markings and no trees have been blazed; that the section lines between Sections 5 and 6 and the lines between Sections 31 and 32 do not meet, and are on a physical line between said sections, and there is no showing as to where the proposed road shall lay at the point where the section lines do not meet;" that irreparable injury might be done by petitioners' changing the channel of the river, cutting down trees and then abandoning the enterprise; that the proposed change in the Chariton River cannot be made in a proceeding to establish a highway; that jurisdiction was not conferred, for that the report of the commissioner omitted to state the number and cost of bridges necessary to be constructed; that he had not laid out the road or marked or surveyed the same or placed stakes or posts as required; that the appraisers to assess damages could not well do so because of the high-

way's not being definitely located; that the resolution of
the board purporting to establish the highway was illegal,
in that the defendant required petitioners to perform labor
in an unknown amount in changing the course of the river
and in grading the highway in an indefinite manner, and
in requiring the petitioners to file a petition for the estab-
lishment of another highway; and that the board of super-
visors was without authority in exacting such conditions,
and especially in extending the time for their performance
until June, 1916. They allege that the defendants, being
the petitioners for the highway and members of the board
of supervisors, are still persisting in their efforts to estab-
lish the highway under the proceedings which, as alleged,
are illegal. The north half mile of the proposed highway
lies between the land owned by Copeland and Yengel, and
the Chariton River passes from Copeland's land through
the section line into the land of Yengel, then bends and
flows back through the land of Copeland. It is also pro-
posed to excavate a ditch in Copeland's land from one
point in the stream to another, and thus prevent the water
from flowing over into Yengel's land, and thereby, through
grading in the river beds, avoid the necessity of construct-
ing two bridges. The next half mile of the proposed high-
way to the south would be through Copeland's land, and
the Chariton River also passes across this portion of the
line, and at that point a bridge would have to be con-·
structed.

2. HIGHWAYS:
establishment:
surveys, etc:
non-necessity.

I. The first contention urged is that
the board of supervisors did not acquire jur-
isdiction to establish the highway proposed,
for that the commissioner to view the same did not comply
with Section 1489 of the Code, exacting that:

"If the precise location of the road cannot otherwise be
given he must cause the line thereof to be surveyed and
plainly marked out."

As the highway was established on the section line, and was described as extending one and one-fourth miles south of the section line, between Sections 29 and 30, the precise location was definitely fixed. It was to be 60 feet in width, and therefore the boundaries would be 30 feet on each side of that line.

**3. Highways: establishment: location: non-joining section lines: presumption.**   If, as is alleged, the lines do not meet at the southeast corner of Section 30, it is to be inferred that these are connected by an east and west highway, previously established; or, if not, that, as the highway in question was to be continuous, the short connection between the ends is to be established on the east and west section line. This being so, the commissioner's report was not defective because of no survey's having been made.

**4. Highways: establishment: location: mile posts, stakes etc.: non-necessity.**   II.   Section 1490 of the Code required that mile posts "be set up at the end of every mile, and the distance marked thereon, and stakes must be set at each change of direction, on which shall be marked the bearings of the new course. Stakes must also be set at the crossings of fences and streams, and at intervals in the prairie not exceeding a quarter of a mile each; in the timber the course must be indicated by trees suitably blazed."

Plainly enough, this section has relation to that preceding, and only when a survey is necessary to indicate the precise location of the highway does this statute necessarily have application. Moreover, it has been construed to be directory, and, therefore, omission to observe its provisions did not necessarily invalidate the commissioner's report. *McCollister v. Shuey*, 24 Iowa 362.

**5. Highways: establishment: bridges: provision non-jurisdictional.**   III.   The commissioner's report is defective in that it does not "show the number of bridges required and the probable cost thereof." The manifest object of this

requirement is to furnish the board of supervisors informa-
tion which, in connection with the amount of damages and
other expenses, will enable it to intelligently pass on the
expediency of establishing the proposed highway.  The omis-
sion so to do, then, cannot be regarded as jurisdictional;
for these features of the report may be waived by the board
and the necessary information ascertained elsewhere.  The
requirement is directory merely, and not jurisdictional.

6. HIGHWAYS:
   establishment:
   conditions.

IV.   Counsel for appellant next argue
that the order of the board of supervisors
establishing the highway was invalid, for
that Section 1501 of the Code only authorizes the establish-
ment of a highway to be "conditioned upon the payment, in
whole or in part, of the damages awarded, or expenses in
relation thereto."

7. HIGHWAYS:
   establishment:
   conditions im-
   posed : certainty
   required.

The argument proceeds on the theory
that "payment" only as technically defined
may be exacted as a condition.  Though
such is not the law (*Harris v. Board,* 88
Iowa 219, and *McElroy v. Hite,* 154 Iowa 453), even if it
were, there is nothing inconsistent therewith in these pro-
ceedings.  The only condition prescribed in the order of
the board of supervisors quoted is the clause, "petitioners
to pay all damages as per appraisement."  What follows is
descriptive of the road to be established, save that portion re-
quiring petitioners to petition for the establishment of
another highway.  That these are expressly exacted excludes
the inference that more is required of them.  Moreover, the
board of supervisors only was authorized to so change the
course of the Chariton River as that but one bridge would
be necessary.  Section 1527-a, Code Supplement, 1913, now
superseded by Section 1527-r1 *et seq.,* Code Supplemental
Supplement, 1915.  Though the proposed road was to be
graded, who shall do so is not stated.  Descriptions of what
sort of a highway shall be established are not to be con-

strued into conditions exacting that it be put in the condition described by these petitioners. Such a requirement, if made, should be plainly stated, or the language such that this is clearly to be implied; for the burden of expense in establishing highways, in the absence of anything to the contrary, is assumed to be appropriate for the county to bear.

8. HIGHWAYS: establishment: conditions: delay in fulfilling: effect.

But two conditions were exacted of the petitioners, i. e., payment of damages and the filing of a petition to vacate one highway and to establish another. The latter of these has been performed, and therefore the validity of its exaction need not be inquired into. Delay in the performance of the other was excusable, for that some of the claims for damages are still in litigation.

9. HIGHWAYS: establishment: conditions: failure to fix time limit.

The board, in exacting that such conditions be complied with prior to the first Monday in June, 1916, ignored Section 1502 of the Code, declaring that:

"A day shall be fixed for the performance of the condition, which must be before the next session of the board, and, if the same is not performed by that day, it shall at such session make some final and unconditional order in the premises."

The board might well have obeyed this statute, and, upon failure of the petitioners to pay before its next meeting, then fixed the time of compliance as at the end of litigation over the amount of damages to be allowed.

10. STATUTES: construction: mandatory or directory.

But statutes requiring the fixing of a date for the doing of something which may as effectually be done at any other time, and merely for the orderly transaction of business, are usually regarded as directory, and we are of opinion that the board still may enter the order, if deemed necessary, fixing the time within which damages shall be paid.

We discover no ground for interfering with the establish-
ment of the highway as proposed.

V. In pursuance of the order hereto-
fore quoted, George F. Carpenter and 51
others, on June 11, 1915, filed a petition
with the county auditor praying that:

11. HIGHWAYS:
establishment:
location:
fatal indefin-
iteness.

"A portion of the highway No. 60, commencing at the
northeast corner of Section No. 31, Lincoln Township, Lu-
cas County, Iowa, and running thence west and southwest
to the north line of the southeast quarter of said section,
be vacated and annulled, and that a highway 60 feet wide,
commencing at the last mentioned point, running thence
east 65 rods, more or less, thence southeast to intersect the
proposed highway along the east line of Section 31, at a
point 10 rods, more or less, south of the northeast corner
of the southeast quarter of said Section 31, be established."

Thomas Gookin was appointed commissioner to inves-
tigate and report on the vacation and establishment of the
highways as proposed, on July 7th following, and on the
next day filed his report, saying:

"I * * * do hereby report favorably. There would
be but one small culvert required, which would cost not
to exceed $40."

Notices were served, claims for damages filed, and a
final order entered by the board of supervisors "to grant
said road petitioned for, and that petitioners pay all dam-
ages as appraised by appraisers."   •

It is to be observed that the final order does not va-
cate or purport to vacate any portion of "highway No. 60"
and that neither the petition nor the commissioner's report
give the precise location of the highway. It was to be 60 feet
wide, and to commence somewhere on the north line of the
southeast quarter of said section and extend east 65 rods,
*more or less,* and thence southeast to the highway along
the section line, at a point 10 rods, *more or less,* south of

the quarter corner. It is utterly impossible to ascertain from this description the location of the proposed highway. No survey was made nor plat returned, as authorized in such a case by Sections 1489, 1490 and 1491 of the Code. The first of these sections provides that:

"If the precise location of the road cannot otherwise be given, he [commissioner] must cause the line thereof to be surveyed and plainly marked out."

This necessarily is mandatory; for, without so doing, neither those interested, the appraisers nor the board of supervisors, are informed of the location of the highway. Because of the indefiniteness pointed out, the order of the board of supervisors is void. As the first order establishing the highway is found to be valid and the last void, owing to indefiniteness of location, it is unnecessary to take up appellees' contention that the appropriate remedy, certiorari, was not pursued. Though the board acquired jurisdiction, its last orders were too indefinite to be of any avail.

The court rightly dismissed the petition, in so far as the first highway was concerned, but should have enjoined defendants from proceeding in pursuance of the order purporting to establish the last.—*Modified and Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.